12405

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN DAIGRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 14 CV 1980 |
| v. | ) | |
| | ) | Judge: Elaine Bucklo |
| MEL DAVIS, Chief of Police of the | ) | |
| Village of Robbins, in his individual | ) | Magistrate Judge: |
| and official capacities, TYRONE WARD, | ) | |
| Mayor of the Village of Robbins, in his | ) | |
| individual and official capacities, JAMES E. | ) | JURY TRIAL DEMANDED |
| COFFEY, SR., Village of Robbins Trustee, | ) | |
| in his individual and official capacities, | ) | |
| DAVID BRYANT, Village of Robbins | ) | |
| Trustee, in his individual and official | ) | |
| capacities, ILA DAVIS, Village of Robbins | ) | |
| Trustee, in her individual and official | ) | |
| capacities, LENNY JOHNSON, Village of | ) | |
| Robbins Trustee, in his individual and | ) | |
| official capacities, SHANTIEL SIMON, | ) | |
| Village of Robbins Trustee, in his | ) | |
| individual and official capacities, and | ) | |
| CHANEL KELLY, Village of Robbins | ) | |
| Trustee, in her individual and official | ) | |
| capacities, the VILLAGE OF | ) | |
| ROBBINS, ILLINOIS, and ERNESTINE | ) | |
| BECK-FULGHAM, Village of Robbins | ) | |
| Village Administrator, in her individual | ) | |
| and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

NOW COMES the Plaintiff, CHRISTIAN DAIGRE, by and through one of his attorneys,

Laura L. Scarry of DeANO & SCARRY, LLC., complaining against MEL DAVIS, Chief of

1

Police of the Village of Robbins in his individual and official capacities, TYRONE WARD,

Mayor of the Village of Robbins in his individual and official capacities, JAMES E. COFFEY,

SR., Trustee for the Village of Robbins in his individual and official capacities, DAVID

BRYANT, Trustee for the Village of Robbins in his individual and official capacities, ILA

DAVIS, Trustee for the Village of Robbins in her individual and official capacities, LENNY

JOHNSONS, Trustee for the Village of Robbins in his individual and official capacities,

SHANTIEL SIMON, Trustee for the Village of Robbins in his individual and official capacities,

CHANEL KELLY, Trustee for the Village of Robbins in her individual and official capacities,

ERNESTINE BECK-FULGHAM, Village Administrator in her individual and official capacities,

and the VILLAGE OF ROBBINS, states the following:

### Nature of the Action

1.      This is an action for monetary damages for violations of Plaintiff's rights via 42

U.S.C. § 1983 under the First Amendment, and the due process clause and equal protection

clause of the Fourteenth Amendment of the United States Constitution, the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201 *et seq*., the Illinois Wage Payment and Collection Act

("IWPCA"), 820 ILCS § 115/1 *et seq*., as well as Illinois state common law.

### Jurisdiction and Venue

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, § 1334

and § 1367.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the

events giving rise to the claims herein occurred, and the Defendants reside, within this district.

### Parties

4.      Plaintiff Christian Daigre ("Daigre" or "Plaintiff") is a Caucasian male. He was

employed by the Village of Robbins as a police officer from March, 2007 until his unlawful termination on October 31, 2013. Plaintiff was promoted to "detective" in July 2009. He was promoted to "commander" in January 2013.

5.     The Village of Robbins ("Village") is a municipality incorporated under the laws of the State of Illinois.

6.     At all relevant times, Defendant Mel Davis ("Davis" or "Defendant"), an African-American male, acted under color of law as the Chief of Police for the Village of Robbins. He was appointed Chief of Police for the Village of Robbins in May 2013. Defendant is sued in his individual capacity for inflicting upon Plaintiff the injuries described throughout the complaint. Defendant Davis was also a final policy maker with respect to various matters at issue in this complaint and, as such, is sued in his official capacity.

7.     At all relevant times, Defendant Tyrone Ward ("Ward" or "Defendant"), an African-American male, acted under color of law as the Mayor for the Village of Robbins. He was elected Mayor for the Village of Robbins in April 2013. Defendant is sued in his individual capacity for inflicting upon Plaintiff the injuries described throughout the complaint. Defendant Ward is also a final policy maker with respect to various matters at issue in this complaint and, as such, is sued in his official capacity.

8.     At all relevant times, Defendant James E. Coffey, Sr. ("Coffey" or "Defendant"), an African-American male, acted under color of law as a member of the Village Board for the Village of Robbins. Defendant is sued in his individual capacity for inflicting upon Plaintiff the injuries described throughout the complaint. Defendant Coffey is also a final policy maker with respect to various matters at issue in this complaint and, as such, is sued in his official capacity.

9.     At all relevant times, Defendant David Bryant ("Bryant" or "Defendant"), an

3

African-American male, acted under color of law as a member of the Village Board for the Village of Robbins. Defendant is sued in his individual capacity for inflicting upon Plaintiff the injuries described throughout the complaint. Defendant Bryant is also a final policy maker with respect to various matters at issue in this complaint and, as such, is sued in his official capacity.

10.    At all relevant times, Defendant Ila Davis ("Ila Davis" or "Defendant"), an African-American female, acted under color of law as a member of the Village Board for the Village of Robbins. Defendant is sued in her individual capacity for inflicting upon Plaintiff the injuries described throughout the complaint. Defendant Ila Davis is also a final policy maker with respect to various matters at issue in this complaint and, as such, is sued in her official capacity.

11.    At all relevant times, Defendant Lenny Johnson ("Johnson" or "Defendant"), an African-American male, acted under color of law as a member of the Village Board for the Village of Robbins. Defendant is sued in his individual capacity for inflicting upon Plaintiff the injuries described throughout the complaint. Defendant Johnson is also a final policy maker with respect to various matters at issue in this complaint and, as such, is sued in his official capacity.

12.    At all relevant times, Defendant Shantiel Simon ("Simon" or "Defendant"), an African-American female, acted under color of law as a member of the Village Board for the Village of Robbins. Defendant is sued in his individual capacity for inflicting upon Plaintiff the injuries described throughout the complaint. Defendant Simon is also a final policy maker with respect to various matters at issue in this complaint and, as such, is sued in his official capacity.

13.    At all relevant times, Defendant Chanel Kelly ("Kelly" or "Defendant"), an African-American female, acted under color of law as a member of the Village Board for the Village of Robbins. Defendant is sued in her individual capacity for inflicting upon Plaintiff the injuries described throughout the complaint. Defendant Kelly is also a final policy maker with

respect to various matters at issue in this complaint and, as such, is sued in her official capacity.

14.     At all relevant times, Defendant Ernestine Beck-Fulgham ("Beck-Fulgham" or "Defendant"), an African-American female, acted under color of law as the Village Administrator for the Village of Robbins. Defendant is sued in her individual capacity for inflicting upon Plaintiff the injuries described throughout the complaint. Defendant Beck-Fulgham is also a final policy maker with respect to various matters at issue in this complaint and, as such, is sued in her official capacity.

**Facts**

15.     The population of the Village of Robbins is 94% African-American.[1] The Village of Robbins Village Hall, Police Department, Fire Department, Water Department, Building Department and Public Works Department are comprised entirely of African-American employees with the exception of one Caucasian male employed at the Police Department and two Caucasian males employed at the Fire Department.

16.     On or about March 5, 2007, Defendant Village of Robbins hired Plaintiff Daigre as a patrol officer. While employed with the Village of Robbins, Plaintiff Daigre served as a patrol officer, detective, and commander. Plaintiff Daigre satisfactorily performed his duties throughout his employment.

**Mayor Ward and the Individual Trustees Discriminate Against Plaintiff by Refusing to Interview Him for the Vacant Chief of Police Position**

17.     In April 2013, Tyrone Ward, formerly a Trustee of the Board for the Village of Robbins, was elected as Mayor for the Village of Robbins.

18.     Shortly after his election, Mayor Ward decided to fill the then-vacant Chief of Police position for the Village of Robbins. The prior Chief of Police, Johnny Holmes, had

---

[1] http://www.zip-codes.com/city/il-robbins-2010-census.asp.

resigned without advance notice in December, 2013 after he was arrested for his second offense of Driving Under the Influence of Alcohol. Commander Guinn, a commander at that time, was appointed interim Chief of Police until the Village of Robbins appointed a new Chief of Police. Commander Guinn was set to retire from his employment with the Village of Robbins in April, 2013.

19.     Upon information and belief, Mayor Ward advised the individual Trustees, Defendants Coffey, Bryant, Ila Davis, Johnson, Simon, and Kelly, as well as the Village Administrator, Beck-Fulgham, of his decision appoint a new Chief of Police and each and every one of them conspired and agreed that Mayor Ward would interview only African-American candidates despite the fact that well-qualified Caucasian candidates expressed interest in the Chief of Police position.

20.     Indeed, Plaintiff had a personal meeting with Mayor Ward in April or May 2013 to discuss his qualifications and interest in applying for the Chief of Police position.

21.     Despite Plaintiff's qualifications, Mayor Ward, with the knowledge, approval and agreement of the individual Trustees, Defendants Coffey, Bryant, Ila Davis, Johnson, Simon, and Kelly, and Village Administrator, Beck-Fulgham, interviewed approximately six lesser qualified African-American individuals, some of whom had questionable backgrounds.

22.     In May 2013, Mayor Ward, the individual Trustees, Defendants Coffey, Bryant, Ila Davis, Johnson, Simon, and Kelly, and Village Administrator Beck-Fulgham, appointed Defendant Mel Davis as Chief of Police. In doing so, they failed to check the criminal history or conduct a background check of Defendant Davis. They did not conduct a background check on Defendant Davis because they knew he was less than qualified to be Chief of Police for the Village of Robbins and had a history of engaging in discrimination against non-African

6

American individuals.

23.     Upon information and belief, prior to his appointment as Chief of Police of the Robbins Police Department, Defendant Davis resigned as Chief of Police from the Calumet Park Police Department after being sued in a civil lawsuit by a non-African-American police sergeant. Also, upon information and belief, while serving as a Chief of Police at the University Park Police Department, he received a vote of "no confidence" from the police department's members. Shortly thereafter, Defendant Davis resigned from the University Park Police Department.

### Defendants Unlawfully "Fire" and Then Demote Plaintiff

24.     The day after being appointed Chief of Police for the Robbins Police Department, Defendant Davis met with Plaintiff and told him that he was fired because he was not "a good fit for the police department." Plaintiff understood this to mean that Defendant Davis was terminating Plaintiff due to his race. After Plaintiff protested, Defendant Davis told Plaintiff that he needed another week to think about what he was going to do.

25.     Upon information and belief, Defendant Ward and the individually-named Defendant trustees were aware that Defendant Davis would be meeting with Plaintiff for the purpose of unlawfully terminating him. Prior to the meeting between Defendant Davis and Plaintiff, Defendant Ward, the individually-named Defendant trustees, and Defendant Beck-Fulgham approved and agreed that Defendant Davis should terminate Plaintiff.

26.     On June 5, 2013, one week after the first meeting, Defendant Davis called Plaintiff into Defendant's office for a second meeting.  During the meeting, Defendant told Plaintiff, "As a minority community, Robbins has no need for a white police commander. We need someone who represents the demographics of our community, not some rich white guy." Defendant Davis then unlawfully demoted Plaintiff from the rank of Commander to the rank of

Detective and told Plaintiff that if he complained about the demotion, Defendant would terminate Plaintiff.

27.     Upon information and belief, Defendant Ward and the individually-named Defendant trustees were aware that Defendant Davis would be meeting with Plaintiff for the purpose of unlawfully demoting him. Prior to the meeting between Defendant Davis and Plaintiff, Defendant Ward and the individually-named Defendant trustees approved and agreed that Defendant Davis should demote Plaintiff.

28.     When Plaintiff Daigre was a Commander, he worked no less than 40 hours a week. However, when he was demoted to Detective, Defendants reduced Plaintiff's hours to approximately 10-20 hours a week with an additional reduction in his pay rate.

29.     Approximately one month later, Plaintiff's prior position of Commander was filled by a lesser qualified African-American male.

**The Joyner Arrest**

30.     On July 23, 2013, Plaintiff Daigre arrested Kenny Joyner ("Joyner") for possession of a controlled substance with intent to deliver, a felony violation of Illinois law. Plaintiff Daigre also arrested Joyner's girlfriend, Sinita Acklin ("Acklin"), for possession of cannabis, a misdemeanor violation of Illinois law.

31.     At the time of the arrest, Joyner possessed 20 individually packaged rocks of crack cocaine, and Acklin possessed several grams of cannabis.  Joyner and Acklin were subsequently transported to the Robbins Police Department for processing while Joyner's vehicle was towed pursuant to the Robbins Police Department's policy relating to felony narcotics arrests.  At the Robbins Police Department, Plaintiff Daigre obtained a handwritten confession from Joyner who admitted to possessing the crack cocaine so he could sell it to make money.

8

32.     While processing Joyner for the felony, Defendant Davis approached Plaintiff Daigre and asked that Plaintiff meet with him in Defendant's office.  Once there, Defendant Davis advised Plaintiff Daigre that Joyner was related to Tyrone Ward, the Mayor of the Village of Robbins. Defendant Davis unlawfully ordered Plaintiff Daigre to release Joyner without charging him and to "get rid of the evidence."  Defendant once again threatened Plaintiff with termination if Plaintiff failed to comply.  Defendant told Plaintiff "be sure to charge Joyner's girlfriend with the cannabis so the Village can get the $825.00 in tow fees."

33.     Already having been unlawfully demoted and threatened with termination by Defendant Davis, Plaintiff released Joyner without charging him. However, unbeknownst to Defendant Davis, Plaintiff did not destroy the evidence and instead sent it to the Illinois State Police Crime Lab for an evaluation.

**Defendants Retaliate and Discriminate Against Plaintiff**

34.     On September 20, 2013, Plaintiff Daigre received a copy of the lab results from the Illinois State Police Crime Lab confirming that the narcotics collected from Joyner were, in fact, crack cocaine.  Later that day, Plaintiff wrote a memo to Defendant Davis requesting that he rescind his July 23rd 2013 order to release Joyner without charging him with a crime so that Plaintiff could file formal charges against Joyner for the felony of possession of narcotics.

35.     Plaintiff Daigre also wrote in his memo to Defendant Davis that if Defendant failed to permit Plaintiff to formally and lawfully charge Joyner with a felony, Plaintiff would have no choice but to inform the Cook County Public Integrity Unit that Defendant Davis committed official misconduct on July 23, 2013 in ordering Plaintiff not to charge Joyner with a felony and "turn the other way." Upon tendering the memo to Defendant Davis, Defendant stated "you're going to regret messing with me Daigre."

36.     Just three days after being told by Plaintiff that he would be reporting the incident to the Cook County Public Integrity Unit, Defendant Davis unlawfully suspended Plaintiff Daigre pending Plaintiff's termination.

37.     Defendant Davis failed to inform Plaintiff Daigre of the reason(s) for his suspension in violation of the Village of Robbins Police Department's general orders, rules and regulations; Illinois state law; and federal law.

38.     Following the suspension, Plaintiff Daigre requested a meeting with the members of the Village Board, but his request was denied. He also requested copies of his personnel files pursuant to Illinois law.

39.     On October 1st, 2013, Plaintiff Daigre met with Defendant Davis, Deputy Chief Jaco and Internal Affairs Captain Smith at the Robbins Police Department at Plaintiff's request. Defendant Davis began the meeting by stating that Plaintiff was still suspended pending the outcome of an internal investigation, but refused to provide Plaintiff the reason(s) for said investigation.

40.     After refusing to provide Plaintiff Daigre with the reason(s) for the suspension and/or pending investigation, Plaintiff asked Defendant Davis whether the suspension was related to Defendant's order not to arrest the mayor's relative, Joyner. Defendant Davis immediately became visibly irate and stated in part, "Daigre, people like you just do not fit in with the image of this police department. NOW, you no longer work here. NOW, you are fired!"

41.     Defendant Davis' comment that "people like you just do not fit in with the image of this police department" was racially motivated.

42.     Defendant Davis' comment was also in retaliation for reporting Defendant's misconduct relating to the Joyner arrest.

43.     After being told he was fired, Plaintiff Daigre left the Robbins Police Department.

44.     Upon information and belief, each of the Defendants met in closed executive session on October 8, 2013 for the purpose of discussing Plaintiff Daigre's employment and conspired and agreed among one another to assist and engage in various overt acts in furtherance of the Defendants' unlawful scheme to develop a pretextual reason for Plaintiff Daigre's termination and to fire Plaintiff Daigre.

45.     The Village Clerk, who was also in attendance of the October 8, 2013 meeting, recorded the minutes of the open session of the October 8, 2013 meeting. The October 8, 2013 closed executive session was audio recorded.

46.     In a memo authored by Defendant Davis and dated October 14, 2013, Defendant stated that Plaintiff Daigre remained suspended pending an internal investigation. Defendant also falsely characterized the October 1, 2013 meeting (which was requested by Plaintiff) as a "hearing" and falsely stated that Plaintiff Daigre used vulgar language and was otherwise disrespectful, and ended the meeting abruptly without "the internal investigation" being completed. The reasons given by Defendant Davis for Plaintiff's continued suspension were a pretext for race discrimination and in retaliation for Plaintiff's reporting of Defendant's misconduct.

47.     On October 23, 2013, the Village of Robbins provided Plaintiff Daigre with a complete copy of his personnel file.

48.     On October 30, 2013, Defendant Davis contacted Plaintiff Daigre via electronic mail stating that Defendant "found" more documents that should have been in Plaintiff's personnel file and that he gave those newly "found" documents Robbins Village Clerk, Palma James, to give to Plaintiff.  Later that day, Plaintiff met with Ms. James who told Plaintiff that

Defendant Davis never gave her such documents. Plaintiff then walked over to the Police Department and questioned Defendant Davis as to the location of the newly "found" documents. Defendant Davis told Plaintiff that the documents he referenced in his email were in the possession of the Village Manager, Ernestine Beck-Fulgham, and that she was supposed to give them to Clerk James.

49.     At the same time, Defendant Davis tendered Plaintiff Daigre a termination letter with two attachments. The letter, signed by Defendant Davis, stated that Defendant terminated Plaintiff's employment because Plaintiff approved the servicing of a digital video recorder on January 30, 2013 (when Defendant Davis was not employed in any capacity for the Village of Robbins) at the cost of $49.11 without prior authorization. Defendant Davis' reason for terminating Plaintiff was a pretext for discriminating against him based on his race and for reporting Defendant's misconduct relating to the Joyner arrest.

50.     Plaintiff Daigre advised Defendant Davis that he received authorization to service the DVR from former interim Chief of Police Guinn. Knowing that Defendant Davis' reason for termination was a pretext for race discrimination and reporting Defendant's prior misconduct, Plaintiff also questioned how Defendant could discipline Plaintiff for an incident that occurred ten months prior, and five months prior to Defendant's appointment as Chief of Police. Defendant Davis responded in part, "That's just the way it is Daigre. You were told to keep your mouth shut, and you didn't want to listen. Now look at where it got you. Here are your termination papers. You should have never opened your mouth about Joyner. Who knows, had you not gone and told on us, you might still have a job. I told you not to mess with me, but you just had to push."

51.     Plaintiff Daigre told Defendant Davis that his comments were improper to which

Defendant smiled and threatened Plaintiff that he would be arrested for trespassing if he did not

leave the Police Department immediately. Plaintiff requested from Defendant Davis the

opportunity to collect his personal belongings but Defendant refused. Defendant Davis refused to

allow Plaintiff to obtain his personal belongings while Defendant Davis remained Chief of

Police.

52.     Plaintiff Daigre immediately went to the Robbins Village Hall and spoke to the

Defendant Beck-Fulgham.  Defendant Beck-Fulgham was aware that Defendant Davis

unlawfully terminated Plaintiff. She told Plaintiff that Defendant Davis gave her some

unidentified documents on October 29, 2013. Upon Plaintiff's request for copies of the

documents, Defendant Beck-Fulgham told Plaintiff that she would provide them on October 31,

2013.

53.     On October 31, 2013, Plaintiff Daigre received copies of documents that were

falsified by Defendant Davis in violation of Plaintiff's right to due process, his right to be free

from race discrimination and in retaliation for reporting Defendant Davis' misconduct relating to

the Joyner arrest.

54.     Plaintiff also obtained copies of payroll records from the Village of Robbins

reflecting his hours worked from January 1, 2013 until he was unlawfully terminated.

55.     The Village of Robbins agreed to pay Plaintiff an hourly wage for each hour

worked in the year 2013. However, when Plaintiff worked in excess of 40 hours per week, the

Village of Robbins failed to pay him one and a half times his hourly wage.

56.     The Village of Robbins also failed to pay him at the same rate as similarly-

situated African American employees of the Robbins Police Department.

57.     On March 20, 2014, Plaintiff filed this action in the U.S. District court for the

Northern District of Illinois.

58.     Each of the Defendants was aware of their duty to preserve relevant evidence relating to Plaintiff's claims during this litigation.

59.     Defendant Beck-Fulgham retained in her personal possession for over 18 months and during the pendency of this litigation the audio recording of the October 8, 2013 closed executive session wherein Plaintiff's employment and termination was were discussed. Each of the Defendants who was present during the closed session was aware that Defendant Beck-Fulgham retained personal possession of the audio recording of that meeting contrary to the Village's policy that audio recordings would be maintained in the Village Clerk's office.

60.     Plaintiff deposed Defendant Beck-Fulgham on May 1, 2015 wherein she could not recall many details of any meeting wherein Plaintiff's employment and termination were discussed.

61.     The next day, Defendant Beck-Fulgham destroyed the audio recording of the October 8, 2013 closed executive session. Upon information and belief, Defendant Beck-Fulgham destroyed the recording after meeting with the other Defendants and agreeing to do so.

62.     Upon information and belief, the audio recording of the October 8, 2013 closed executive session was destroyed to conceal the Defendants' conspiracy and agreement with the one another to commit certain unlawful acts in abuse of their official authority as public officials and final policymakers to further the Defendants' unlawful scheme to develop a pretextual reason for Plaintiff Daigre's termination and to fire Plaintiff Daigre.

63.     Plaintiff is prejudiced by the destruction of the audio recording of the October 8, 2013 closed executive session because no verbatim or other written record of the October 8, 2013 meeting exists and the memories of persons who were part of discussions relating to Plaintiff's

employment and termination are vague and inconsistent.

64.     Defendants' conduct in initially firing Plaintiff Daigre, demoting him from Commander to Detective, then suspending Plaintiff Daigre, continuing Plaintiff's suspension, initiating an internal investigation, and terminating Plaintiff were a pretext for race discrimination, an attempt to cover up Defendants' wrongful conduct, and in retaliation for Plaintiff's reporting Defendants' misconduct.

65.     Defendants' conduct as described in the previous paragraph was performed in their individual capacity and in their official capacities. With respect to Defendant Davis' official capacity, Defendant Davis, as a matter of custom and practice, possessed and exercised final policy making authority to initiate an internal investigation, suspend and terminate Plaintiff Daigre as a pretext for race discrimination, an attempt to cover up Defendant's wrongful conduct, and in retaliation for Plaintiff's reporting Defendant's misconduct.

66.     With respect to Defendant Ward's, the individually-named Defendant trustees', and Defendant Beck-Fulgham's official capacities, they, as a matter of custom and practice, possessed and exercised final policy making authority to suspend and terminate Plaintiff Daigre as a pretext for race discrimination, an attempt to cover up Defendant Davis' wrongful conduct, and in retaliation for Plaintiff's reporting Defendant Davis' misconduct.

67.     All of the Defendants acted intentionally and maliciously under color of law to deprive Plaintiff Daigre of his rights under the First and Fourteenth Amendments of the United States Constitution, federal and Illinois state law.

68.     Defendants' conduct was intentional, retaliatory, and malicious, accompanied by ill will and done for the purpose of injuring Plaintiff Daigre, thereby subjecting him to liability for punitive damages.

15

69.     As a direct and proximate result of Defendants' conduct, Plaintiff Daigre has suffered severe damages including the loss of reputation, pain and suffering, mental anguish, inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

## COUNT I

### 42 U.S.C. § 1983 Violation of First Amendment v. All Defendants

70.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

71.     Prior to the suspension and termination of Plaintiff's employment in October 2013, Plaintiff Daigre engaged in protected speech pursuant to the First and Fourteenth Amendments to the United States Constitution when he informed Defendant Davis that he would report, and did report, Defendant Davis' misconduct relating to the Joyner arrest.

72.     Plaintiff's speech was a substantial or motivating factor for Defendants' wrongful and retaliatory termination of Plaintiff's employment.

73.     Plaintiff's speech concerned matters of public concern, the highest degree of speech protected by the First Amendment.

74.     Defendant Davis' explanation for Plaintiff's suspension and eventual termination was a pretext to conceal Defendant Davis' own wrongful conduct and the fact that the termination of Plaintiff's employment was in direct retaliation for Plaintiff engaging in protected speech.

75.     Said acts proximately caused Plaintiff to be denied his right to free speech under the First Amendment of the United States Constitution through 42 U.S.C. § 1983.

76.     The actions of Defendants in denying him his right to free speech caused Plaintiff to suffer severe damages including the loss of reputation, pain and suffering, mental anguish,

inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

    A.    Reinstatement of his employment with the Village of Robbins Police Department;

    B.    All wages and benefits Plaintiff would have received but for the discrimination and retaliation, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;

    C.    Compensatory damages in an amount to be determined at trial;

    D.    Punitive damages as allowed by law as against the individual Defendant;

    E.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

    F.    Such other relief as the Court may deem just or equitable.

## COUNT II

### 42 U.S.C. § 1983 Violation of Equal Protection v. All Defendants

77.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

78.    Defendants intentionally subjected Plaintiff Daigre to unequal and discriminatory treatment that altered the conditions of Plaintiff's employment.

79.    At all times relevant, Defendant Davis acted as the Chief of Police and policy maker for the Village of Robbins.

80.    The actions of Defendants against Plaintiff Daigre violated his equal protection right to be free from discrimination under the Fourteenth Amendment to the United States Constitution through 42 U.S.C. § 1983.

81.    The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff Daigre's rights as secured by the Fourteenth Amendment to the United States Constitution through 42 U.S.C. § 1983.

82. The actions of Defendants in discriminating against Plaintiff Daigre based on his race caused Plaintiff to suffer severe damages including the loss of reputation, pain and suffering, mental anguish, inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

      A.    Reinstatement of his employment with the Village of Robbins Police Department;

      B.    All wages and benefits Plaintiff would have received but for the discrimination and retaliation, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;

      C.    Compensatory damages in an amount to be determined at trial;

      D.    Punitive damages as allowed by law as against the individual Defendant;

      E.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

      F.    Such other relief as the Court may deem just or equitable.

## COUNT III

### 42 U.S.C. § 1983 Violation of Due Process v. All Defendants

83. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

84. Defendants suspended and investigated Plaintiff Daigre on falsified and baseless charges of violations of the Village of Robbins Police Department's general orders, rules and regulations because of Plaintiff Daigre's race, as a cover up for Defendant Davis' misconduct, and in retaliation for Plaintiff's reporting of Defendant Davis' misconduct in violation of his right to due process of law.

85. Defendants created false and illegitimate reasons for suspending and later terminating Plaintiff Daigre, denied him the right to a full and fair hearing by fabricating matters

to substantiate Plaintiff Daigre's suspension and later termination in violation of the Village of Robbins' Police Department general orders, rules and regulations; Illinois state law; and the United States Constitution.

86.     Said acts proximately caused Plaintiff to be denied his right to due process under the Village of Robbins' Police Department general orders, rules and regulations; Illinois state law; and the Fourteenth Amendment of the United States Constitution through 42 U.S.C. § 1983.

87.     The actions of Defendants in denying him due process of law caused Plaintiff to suffer severe damages including the loss of reputation, pain and suffering, mental anguish, inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

A.     Reinstatement of his employment with the Village of Robbins Police Department;

B.     All wages and benefits Plaintiff would have received but for the discrimination and retaliation, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;

C.     Compensatory damages in an amount to be determined at trial;

D.     Punitive damages as allowed by law as against the individual Defendant;

E.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

F.     Such other relief as the Court may deem just or equitable.

## COUNT IV

**42 U.S.C. § 1983 Conspiracy to Deprive Constitutional Rights v. All Defendants**

88.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

19

89.     In an effort to deprive Plaintiff of his constitutional rights as described in the previous paragraphs of this Complaint, the Defendants reached an agreement amongst themselves to develop a pretextual reason for terminating Plaintiff.

90.     In this manner, the Defendants, acting in concert with other unknown coconspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

91.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

92.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff Daigre's rights were violated, and he suffered financial damages, as well as emotional distress and anguish, as is more fully alleged above.

93.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

94.     The misconduct described in this Count was undertaken was tacitly ratified by policymakers for the municipal defendants with final policymaking authority.

WHEREFORE, Plaintiff respectfully requests:

A.      Reinstatement of his employment with the Village of Robbins Police Department;

B.      All wages and benefits Plaintiff would have received but for the discrimination and retaliation, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;

C.      Compensatory damages in an amount to be determined at trial;

D.      Punitive damages as allowed by law as against the individual Defendant;

E.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

G.      Such other relief as the Court may deem just or equitable.

## COUNT V

**Retaliatory Discipline and Discharge under Illinois State Law v. All Defendants**

95.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

96.     Prior to the suspension and termination of Plaintiff's employment, Plaintiff Daigre informed Defendant Davis that he would, and did, report Defendant's misconduct relating to the Joyner arrest to the Cook County Public Integrity Unit.

97.     Defendant Davis suspended and later terminated Plaintiff Daigre's employment because Plaintiff engaged in the protected speech or speech conduct as set forth in the paragraphs above.

98.     The State of Illinois has a clearly mandated public policy pursuant to the Illinois Local Governmental Employees Political Rights Act ("LGEPRA"), 50 ILCS 135/10(b), which provides: "No employee of a unit of local government or school district may (i) use his or her official position of employment to coerce or inhibit others in the free exercise of their political rights." Such political rights include, without limitation, campaigning for or against political candidates, speaking out on questions of public policy, distributing political literature, and making campaign contributions." 50 ILCS 135/5. This state public policy mandate furthers the protection of the health, safety, and welfare of the citizens of the State of Illinois.

99.     Defendant Davis' termination of Plaintiff Daigre's employment was an act of retaliatory discharge motivated by Plaintiff's threat and later reporting of Defendant's misconduct relating to the Joyner arrest.

100.     But for Plaintiff Daigre's whistle blowing activities which were intended to protect the citizens of the Village of Robbins from public corruption, Plaintiff would not have

been suspended and later terminated from his employment with the Village.

101.    As a direct and proximate result of Defendants' retaliatory discipline and discharge in violation of clearly mandated federal and Illinois public policy, Plaintiff Daigre has sustained damages.

102.    Defendants' actions of retaliatory discipline and discharge caused Plaintiff Daigre to suffer severe damages including the loss of reputation, pain and suffering, mental anguish, inconvenience, lost wages and benefits, future pecuniary losses and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

A.    Reinstatement of his employment with the Village of Robbins Police Department;

B.    All wages and benefits Plaintiff would have received but for the discrimination and retaliation, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;

C.    Compensatory damages in an amount to be determined at trial;

D.    Punitive damages as allowed by law as against the individual Defendant;

E.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

F.    Such other relief as the Court may deem just or equitable.

## COUNT VI

### Violation of the Illinois Payment and Collection Act v. All Defendants

103.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

104.    At all relevant times herein, Defendants were "employer[s]" as defined in the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*., and Plaintiff was an "employee" within the meaning of the Act. Defendants were at all times aware of their obligation to pay its hourly employees, including Plaintiff, for all time they worked, including overtime in

excess of 40 hours a week, and are aware of the compensation actually paid to Plaintiff.

105.     Defendants agreed to compensate its employees, including Plaintiff, for all time worked, including overtime for the hours worked in excess of 40 hours a week, at a rate of one and a half times Plaintiff's regular wage.

106.     However, Defendants instituted practices that resulted in Plaintiff working certain time without overtime compensation at one and a half times Plaintiff's rate of pay. The result was that Defendants failed to compensate Plaintiff for all the time he worked.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.     a judgment in the amount of all back wages due as provided by the Illinois Wage Payment and Collection Act;

B.     prejudgment interest on the back wages in accordance with 815 ILCS 205/2 and punitive damages pursuant to the formula set forth in 820 ILCS 105/12(a);

C.     reasonable attorneys' fees and costs of this action;

D.     such other and further relief as this Court deems just and proper.

## COUNT VII

### Overtime Violation: Fair Labor Standards Act v. All Defendants

107.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

108.      Defendants at all relevant times operated an enterprise engaged in commerce within the meaning of the Fair Labor Standards Act ("FLSA").

109.     At all relevant times to this action, Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203.

110.     At all relevant times to this action, Plaintiff was employed by the Defendants as an employee within the meaning of 29 U.S.C. § 203.

23

111.    Defendants willfully failed to pay Plaintiff overtime compensation for each hour he worked in excess of forty hours in a workweek in violation of the FLSA, 29 U.S.C. § 207.

112.    Defendants' violations of the FLSA, as described herein, were willful and intentional.

113.    Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime wages, an additional equal amount as liquidated damages, reasonable attorney's fees, and the costs of the action, pursuant to 29 U.S.C. § 216(b), in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests:

A.    Compensatory damages in an amount to be determined at trial;

B.    Punitive damages as allowed by law as against the individual Defendants;

C.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

D.    Such other relief as the Court may deem just or equitable.

## COUNT VIII

### State Law Claim of Conspiracy v. All Defendants

114.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

115.    As described more fully in the preceding paragraphs, the Defendant Officers, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

116.    In furtherance of the conspiracy, the Defendant Officers committed overt acts and were otherwise willful participants in joint activity.

117.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

118.     As a proximate result of the Defendant Officers' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

WHEREFORE, Plaintiff respectfully requests:

    A.     Compensatory damages in an amount to be determined at trial;

    B.     Punitive damages as allowed by law as against the individual Defendants;

    C.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

    D.     Such other relief as the Court may deem just or equitable.

## COUNT IX

### Respondeat Superior

119.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

120.     In committing the acts alleged in the preceding paragraphs, the Defendants were members and agents of the Village of Robbins, acting at all relevant times within the scope of their employment.

121.     Defendant Village of Robbins is liable as principal for all state law torts committed by their agents.

WHEREFORE, Plaintiff respectfully requests:

    A.     Compensatory damages in an amount to be determined at trial;

    B.     Punitive damages as allowed by law as against the individual Defendants;

    C.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

    D.     Such other relief as the Court may deem just or equitable.

## COUNT X

### State Law Claim--Indemnification

122.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

123.    Illinois law provides that public entities are directed o pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

124.    The individually named Defendants are or were employees or agents of the Village of Robbins, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff respectfully requests:

      A.    Compensatory damages in an amount to be determined at trial;

      B.    Punitive damages as allowed by law as against the individual Defendants;

      C.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

      D.    Such other relief as the Court may deem just or equitable.

## COUNT XI

### 42 U.S.C. § 1983 Destruction of Evidence/Denial of Access v. All Defendants

125.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

126.    Defendants intentionally destroyed evidence of their unlawful acts, including but not limited to the audio recording of the October 8, 2013 closed executive session at which the Defendant Village Board of Trustees conspired with Defendant Ward and Defendant Beck-Fulgham and agreed to assist, aid, abet and otherwise act in concert with Defendant Ward,

Defendant Beck-Fulgham, and Defendant Davis to develop a pretextual reason for Plaintiff Daigre's termination and to fire Plaintiff Daigre.

127.    The Village is required by the Illinois Open Meeting Act to prepare and maintain a verbatim record of all matters discussed during a closed session of the Village Board of Trustees.

128.    The Village also maintained a policy and practice, at all relevant times, of recording via audiotape any and all closed sessions of the Village Board of Trustees and had a duty to so record the October 8, 2013 meeting.

129.    The evidence destroyed by Defendants could have been used by Plaintiff in prosecution of his claims against Defendants.

130.    The Defendants' destruction of evidence deprived Plaintiff of use of that evidence and ultimately benefitted the Defendants by preventing that evidence from being used against them in this action.

131.    At the time they destroyed such evidence, Defendants were aware of Plaintiff's complaint against them and knew or could reasonably foresee the materiality of such evidence to Plaintiff's legal action.

132.    In destroying evidence of their unlawful acts, Defendants knew, or should have known, the evidence was material to various Plaintiff's claims.

133.    Defendants destroyed the foregoing evidence with full knowledge such destruction was unlawful and in an effort to avoid liability for other conduct they likewise knew to have been unlawful.

27

134.     The destruction of evidence and failure to preserve evidence was undertaken by Defendants under color of law, in the course and within the scope of their employment as public officials.

135.     Defendants' foregoing conduct was objectively unreasonable, committed with malice, and undertaken intentionally with willful and reckless indifference to Plaintiff's constitutional rights.

136.     Defendants' foregoing conduct violated Plaintiff's rights as guaranteed by the United States Constitution and has effectively denied Plaintiff meaningful access to the courts and relevant administrative agencies.

137.     Among other things, Defendants' foregoing conduct has prevented a full and open disclosure of facts crucial to Plaintiff's cause of action so as to have severely undermined Plaintiff's ability to prove his case, defeat Defendants' defenses and assert all claims which would have otherwise been available in this action.

138.     Plaintiff suffered damages, both monetary and non-monetary, as a direct and proximate result of Defendants' destruction of evidence and failure to preserve evidence.

139.     Defendants' foregoing conduct warrants punitive damages, which are proper in this case to: 1) eliminate prejudice caused Plaintiff in this action; 2) punish the Defendants for their willful and wanton misconduct; and 3) deter such future misconduct.

WHEREFORE, Plaintiff respectfully requests:

A.     Compensatory damages in an amount to be determined at trial;

B.     Punitive damages as allowed by law as against the individual Defendants;

C.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

D.     Such other relief as the Court may deem just or equitable.

## COUNT XII

### State Law Spoliation/Destruction of Evidence v. All Defendants

140.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

141.     Defendants intentionally destroyed evidence of their unlawful acts, including but not limited to the audio recording of the October 8, 2013 closed executive session at which the Defendant Village Board of Trustees conspired with Defendant Ward and Defendant Beck-Fulgham and agreed to assist, aid, abet and otherwise act in concert with Defendant Ward, Defendant Beck-Fulgham, and Defendant Davis to develop a pretextual reason for Plaintiff Daigre's termination and to fire Plaintiff Daigre.

142.     The Village is required by the Illinois Open Meeting Act to prepare and maintain a verbatim record of all matters discussed during a closed session of the Village Board of Trustees.

143.     The Village also maintained a policy and practice, at all relevant times, of recording via audiotape any and all closed sessions of the Village Board of Trustees and had a duty to so record the October 8, 2013 meeting.

144.     The Defendants destroyed evidence and otherwise failed to preserve evidence in violation of a known duty to Plaintiff and other residents of the Village of Robbins.

145.     The evidence destroyed by Defendants could have been used by Plaintiff in prosecution of his claims against Defendants.

146.     The Defendants' destruction of evidence deprived Plaintiff of use of that evidence and ultimately benefitted the Defendants by preventing that evidence from being used against them in this action.

29

147.    At the time they destroyed such evidence, Defendants were aware of Plaintiff's complaint against them and knew or could reasonably foresee the materiality of such evidence to Plaintiff's legal action.

148.    In destroying evidence of their unlawful acts, Defendants knew, or should have known, the evidence was material to various Plaintiff's claims.

149.    Defendants destroyed the foregoing evidence with full knowledge such destruction was unlawful and in an effort to avoid liability for other conduct they likewise knew to have been unlawful.

150.    The destruction of evidence and failure to preserve evidence was undertaken by Defendants under color of law, in the course and within the scope of their employment as public officials.

151.    Defendants' foregoing conduct was objectively unreasonable, committed with malice, and undertaken intentionally with willful and reckless indifference to Plaintiff's constitutional rights.

152.    Defendants' foregoing conduct violated Plaintiff's rights as guaranteed by Illinois common law and statutory law.

153.    Plaintiff suffered damages, both monetary and non-monetary, as a direct and proximate result of Defendants' destruction of evidence and failure to preserve evidence.

154.    Defendants' foregoing conduct warrants punitive damages, which are proper in this case to: 1) eliminate prejudice caused Plaintiff in this action; 2) punish the Defendants for their willful and wanton misconduct; and 3) deter such future misconduct.

WHEREFORE, Plaintiff respectfully requests:

A.    Compensatory damages in an amount to be determined at trial;

B.      Punitive damages as allowed by law as against the individual Defendants;

C.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

D.      Such other relief as the Court may deem just or equitable.

**JURY DEMAND**

Plaintiff, CHRISTIAN DAIGRE, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

DeANO AND SCARRY, LLC.

s/Laura L. Scarry
**Attorney for Plaintiff**

Laura L. Scarry ARDC#6231266
**DeAno and Scarry, LLC**
53 West Jackson Boulevard
Suite 740
Chicago, IL  60604
Tel:  (630) 690-2800
Fax:  (312) 564-4125

# **EXHIBIT A**